665 P.2d 83

John K. GOODMAN, Chester E. Johns, Raymond Shaffer, Fred C. Struckmeyer, Jr. and William P. French, as members of and constituting the Arizona Racing Commission; Clyde Allred, Lou Baranello, and Donald Levine, State Stewards, Petitioners,

v.

SUPERIOR COURT of the State of Arizona In and For the COUNTY OF MARICOPA; Robert H. Pickrell, a judge thereof; and Paul OLIVER, Real Party in Interest, Respondents.

No. 16439–SA.

Supreme Court of Arizona, En Banc.

May 24, 1983.

Rehearing Denied June 21, 1983.

---

Robert K. Corbin, Atty. Gen. by Evelyn R. Epstein and Charles Pierson, Asst. Attys. Gen., Phoenix, for petitioners.

Warren Siegal and Clayton W. Plotkin, Phoenix, for respondents.

HAYS, Justice.

This is a petition for special action filed by the office of the Arizona Attorney General on behalf of the Arizona Racing Commission. We have jurisdiction pursuant to Art. 6, § 5(4) of the Arizona Constitution.

The Honorable Robert Pickrell, Judge of the Superior Court, is named as respondent, and the real party in interest in this action is Paul Oliver, racehorse owner and trainer. On January 3 and January 6, 1983 the department stewards issued Notices of Hearing to Oliver concerning the alleged drugging of four horses which Oliver either owns or trains. Three of the horses finished first in their respective races; one finished second. The Notices state that urine samples taken from these horses subsequent to the races contain banamine, a powerful analgesic, in violation of the rules of the Arizona Department of Racing. The Notices summoned Oliver to appear within twenty-four hours before the stewards for a hearing.

On January 6, 1983, the respondent judge granted, at Oliver's request, an *ex parte* order temporarily restraining the state stewards from proceeding with the hearing regarding the drugging of the horses. Petitioners in this action filed a motion for reconsideration with the trial judge and a motion to quash the restraining order. The judge denied these motions on January 25, holding that the stewards must comply with the provisions of the Administrative Proce-

dure Act, A.R.S. title 41, chapter 6, article 1, in conducting their hearing.

The judge indicated on the record his belief that all the rules and regulations promulgated by the Arizona Racing Commission were abrogated in 1982 when the Arizona legislature amended the racing code, A.R.S. title 5, chapter 1, article 1; consequently, the newly-created Arizona Department of Racing and the Racing Commission had to reenact such rules and regulations as they wished to govern the racing industry. The judge stated that because the Racing Commission has not enacted any new rules concerning the steward's hearings since the 1982 legislative amendments, no agency rules exist and the provisions of the Administrative Procedure Act apply.

Of particular relevance is A.R.S. § 41–1009 which provides that notice shall be given at least *twenty days* prior to the date set for all hearings in contested cases "[u]nless otherwise provided by law." Rules adopted by the Racing Commission prior to the 1982 amendments and pursuant to A.R.S. § 5–104 authorize steward's hearings upon twenty-four *hour* notice. Based upon his view that the rule prescribing twenty-four hour notice was nugatory, the trial judge enjoined the stewards from proceeding with their hearing until they complied with the requirements of the Administrative Procedure Act.

█ It becomes clear that the issue before us is whether the Arizona legislature intended to abolish the existing rules and regulations of the Racing Commission when they amended the racing code in 1982. We start with the premise that a rule has the same effect and force as a "law" within the meaning of A.R.S. § 41–1009. *Gibbons v. Arizona Corporation Commission*, 95 Ariz. 343, 390 P.2d 582 (1964). If the rules and regulations of the Racing Commission survived the 1982 amendments, then the twenty day notice requirement of A.R.S. § 41–1009 does not apply to hearings before the state stewards. Our reading of the statutes and their legislative history leads us to conclude that the trial judge erred in holding

that the Administrative Procedure Act applies to steward's hearings.

█ The Arizona Racing Commission has had the authority to promulgate rules and regulations necessary to supervise the sport of horseracing since its creation in 1949. 1949 Ariz.Sess.Laws, Ch. 61, Sec. 4. The racing statutes have since been amended on several occasions but the authority to promulgate rules has remained constant. 1953 Ariz.Sess.Laws, Ch. 131, Sec. 1; 1972 Ariz.Sess.Laws, Ch. 108, Sec. 3. Former A.R.S. § 5–104(B) provided:

> "The commission shall prepare and promulgate such complete rules and regulations to govern the racing meetings as may be required to protect and promote the safety and welfare of the animals participating in such racing meetings, to protect and promote public health, safety and the proper conduct of racing and pari-mutuel wagering and any other matter pertaining to the proper conduct of racing within this state."

1972 Ariz.Sess.Laws, Ch. 108, Sec. 3, p. 498. The 1982 amendments simply redesignated this section as A.R.S. § 5–104(A) but otherwise did not alter it in any way. It is pursuant to this statutory authority that the Racing Commission promulgated the rules and regulations in question.

Authority on statutory interpretation states that provisions in an original act which are unchanged by an amendment are held to be the law since first enacted.

> "Provisions of the original act or section which are repeated in the body of the amendment, either in the same or equivalent words, are considered a continuation of the original law .... The provisions of the original act or section reenacted by the amendment are held to have been the law since they were first enacted, and the provisions introduced by the amendment are considered to have been enacted at the time the amendment took effect. Thus, rights and liabilities accrued under the provisions of the original act which

are reenacted are not affected by the amendment."

Sutherland Stat Const § 22.33 (4th Ed).

It is a fair interpretation of the legislative history that the Racing Commission's authority to regulate the racing industry was unchanged by the legislative amendments. The next inquiry, then, is whether the rules and regulations promulgated pursuant to that authority have also survived the recent amendments.

The Arizona legislature expressly confirmed its approval of the Racing Commission's rules and regulations relating to the drugging of horses in the 1982 act:

"It is the intent of the legislature that the Arizona racing commission rules and regulations which currently prohibit the drugging of horses and dogs remain in effect."

1982 Ariz.Sess.Laws, Ch. 310, Sec. 39. Those rules and regulations reflect an urgency with regard to the discovery of prohibited drugs in animals. The rules provide that:

"In all cases where the laboratory reports or any other evidence show the administration or presence of a prohibited drug, the stewards shall immediately investigate and disqualify the horse, invoking a civil penalty or suspend the trainer, or other person, who is found to be in violation."

A.C.R.R. R4–27–209.F. When a steward feels any rule has been violated, he may not impose a penalty until a hearing is held at which all the stewards are present. A.C.R.R. R4–27–209.G(18). Twenty-four hour notice must be given in writing to the alleged violator. The rules set forth that person's right to present witnesses on his own behalf and require the stewards to promptly forward their written decision to the Commission and to the person affected. A.C.R.R. R4–27–209.G.18.h provides:

"In the interest of the health, safety and welfare of the people of the State of Arizona the stewards may summarily declare a horse scratched and may suspend a license pending a steward's hearing."

A suspension of a racing license by the track stewards commences at once and may run for a period of up to sixty days without reinstatement. A.R.S. § 5–104(G). The Department of Racing or a hearing officer is authorized to review the suspension, but the suspension remains effective pending the outcome of the review. That decision is then subject to judicial review under the Administrative Review Act, A.R.S. title 12, article 6, chapter 7.

In *Barry v. Barchi,* 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979), the United States Supreme Court upheld a New York practice of imposing an interim suspension of a horsetrainer's license without a prior hearing pending a prompt administrative or judicial hearing. The Court found that the state's interest in preserving the integrity of horseracing and in protecting the public from harm outweighed the trainer's interest in retaining his license. "At the interim suspension stage, an expert's affirmance, although untested and not beyond error, would appear sufficiently reliable to satisfy constitutional requirements." *Id.* at 65, 99 S.Ct. at 2649. The Court then held that the provisions for an administrative hearing must assure a speedy resolution of outstanding issues between the trainer and the state.

The Arizona Racing Commission's procedure for suspending a license affords the holder with a summary hearing prior to suspension, with the opportunity for administrative and judicial review. We would assume that such review takes place without appreciable delay. Given the legislature's declared intent that the rules and regulations regarding the drugging of horses remain in effect, the Commission's hearing procedure to suspend violators of those rules must also stand. Without this type of summary procedure, the constitutionality of which has been upheld by the United States Supreme Court, the Commission's prohibitions against the drugging of animals are spineless. We will not disturb the legislature's determination that such procedures are necessary to preserve the integrity of Arizona's racing industry. Not only is the drugging of horses both potentially harmful

to the animals and their jockeys, it also operates as a deceit and fraud upon the wagering public.

■ In amending the racing statutes, the legislature stated their intent to strengthen the regulation of the racing industry in Arizona through the strengthening of the Arizona Racing Commission and by the creation of the Arizona Department of Racing. 1982 Ariz.Sess.Laws, Ch. 310, Sec. 1. We believe that the continued vitality of the rules and regulations of the Racing Commission is both fundamental and necessary to this objective. We therefore hold that the statutory provision authorizing the Racing Commission to promulgate rules and regulations was not abolished, repealed or even changed by the recent amendments to the racing code and that the rules and regulations promulgated thereunder remain effective.

Respondent argues that the amended statute authorizes the Department of Racing to promulgate rules and regulations which conflict with the extant rules of the Commission and therefore, those rules are all abrogated. We started with the proposition that provisions of the original act which are not changed by the amendment are held to have been the law since first enacted, and we find no conflict with regard to the steward's hearings. If conflicts between the Commission's rules and the amended statutes appear, those conflicts will be resolved in favor of the statutes in accordance with rules of statutory interpretation. Meanwhile, the rules and regulations of the Racing Commission which do not conflict shall remain in full force and effect.

■ In his response, Oliver asserts other violations committed by the Racing Commission and contests the validity of the hearing procedure for suspending his license. The issue before us in this special action was whether the trial court abused its discretion in ordering the stewards to comply with the Administrative Procedure Act and in issuing an injunction; we hold that he did. We are not the proper forum to consider Oliver's claims. Arizona Revised Statutes § 41–1007(A) allows one affected by an agency rule to contest its validity by filing an action for declaratory relief in the superior court in addition to other remedies available. A.R.S. § 41–1007(B).

The relief requested by petitioner is granted.

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.