IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

---

CEMEX CONSTRUCTION MATERIALS SOUTH, LLC,
A FOREIGN LIMITED LIABILITY COMPANY,
*Plaintiff/Appellee,*

*v.*

FALCONE BROTHERS & ASSOCIATES, INC., AN ARIZONA CORPORATION,
AND THE GUARANTEE COMPANY OF NORTH AMERICA, USA,
A MICHIGAN CORPORATION,
*Defendants/Appellants.*

No. 2 CA-CV 2014-0044
Filed April 30, 2015

---

Appeal from the Superior Court in Pima County
No. C20121949
The Honorable Carmine Cornelio, Judge

**VACATED AND REMANDED**

---

COUNSEL

Lewis Roca Rothgerber LLP
By Kimberly A. Demarchi, Phoenix, and
John A. Hinderaker, Tucson
*Counsel for Plaintiff/Appellee*

Vingelli & Errico, Tucson
By Michael J. Vingelli

and

William E. Druke, Tucson
*Co-Counsel for Defendants/Appellants*

Quarles & Brady LLP, Tucson
By Craig H. Kaufman and Deanna Conn
*Counsel for Amicus Curiae Arizona Rock Products Association*

---

**OPINION**

---

Presiding Judge Kelly authored the opinion of the court, in which Judge Howard and Judge Vásquez concurred.

---

K E L L Y, Presiding Judge:

¶1　　　　Falcone Brothers & Associates, Inc. (Falcone) appeals from the trial court's judgment awarding damages to Cemex Construction Materials South, LLC (Cemex) for materials and labor Cemex provided to a public works construction project for which Falcone was the general contractor. Falcone argues the court erred in concluding that notices sent by Cemex to Falcone regarding amounts Cemex was owed satisfied the requirements of Arizona's "Little Miller Act." *See* A.R.S. § 34-223(A) (requiring materialman to provide estimate of costs within twenty days of supplying labor or materials and notice of any unpaid balance within ninety days of completion). Falcone contends Cemex's notices, which were sent by first class mail with a certificate of mailing, did not comply with § 34-223(A), and Cemex therefore was precluded from bringing its action. For the following reasons, we vacate the judgment and remand for a new trial.

**Factual and Procedural Background**

¶2　　　　The record supports the following facts and procedural history. Falcone was the general contractor for a City of Tucson public works improvement project. The project was bonded and guaranteed by The Guarantee Company of North America (GCNA). Falcone subcontracted with J & S Commercial Concrete Contractors,

2

Inc. (J & S) for concrete work on the project and J & S, in turn, subcontracted with Cemex to provide construction materials.

¶3        In 2011, Cemex filed a complaint against J & S, Falcone, and GCNA, alleging it had not been paid for the materials it had supplied to the project.  J & S did not answer the complaint, and Cemex obtained a default judgment against it.  Cemex then moved for summary judgment against Falcone and GCNA, claiming it was entitled to recover against the statutory payment bond.  In its motion, Cemex asserted that it had filed four preliminary twenty day notices to Falcone pursuant to § 34-223(A) before filing suit, and that each notice had been mailed separately via first class mail, postage prepaid, with a certificate of mailing.

¶4        In its response to Cemex's motion, Falcone asserted that "[a]t no time before, during or after The Project did [it] receive a Preliminary Twenty-Day Notice from [Cemex] for materials" Cemex had supplied to J & S, as is required by § 34-223(A).[1]  This claim was supported by a declaration from Falcone's owner, who asserted Falcone had not received any twenty day notices.  Falcone also contended that genuine issues of material fact existed regarding whether Cemex had delivered any concrete to the project and the amount of concrete delivered.  Subsequently, the trial court granted Cemex's request to withdraw its motion for summary judgment, allowing the parties additional time for disclosure and discovery.

¶5        In December 2012, Cemex renewed in part its motion for summary judgment on the issue of damages, urging that Falcone's discovery responses indicated Cemex had "supplied at least 837 cubic yards of concrete to the project."  Falcone agreed the project had required 837 cubic yards of concrete but maintained that a genuine issue of material fact existed regarding "how much concrete Cemex actually provided to J & S" for the project.

¶6        Falcone then filed a motion for summary judgment, claiming it had not received the statutorily required twenty day

_____

        [1]Falcone admits it received the statutorily required ninety day notices, which Cemex sent via certified mail.  *See* § 34-223(A).

notices and Cemex therefore was precluded from bringing its action. It further contended the notices were insufficient to satisfy the statutory requirements because they were sent by first class, rather than by registered or certified mail. Cemex maintained that the four preliminary twenty day notices it had sent by first class mail with certificates of mailing satisfied the statute's requirements.

¶7 In March 2013, the trial court denied Cemex's motion for partial summary judgment on the issue of damages. After a hearing, the court also denied Falcone's motion for summary judgment, concluding that Cemex's certificates of mailing and affidavits were "sufficient to meet the purposes of" § 34-223(A). After a bench trial on the sole issue of damages, the court entered judgment in favor of Cemex, awarding it $81,913.04 in damages along with prejudgment interest, costs, and attorney fees. Falcone timely appealed. [2] We have jurisdiction pursuant to A.R.S. § 12-2101(A).

**Discussion**

¶8 Falcone argues the trial court erred by concluding that the twenty day notices Cemex sent to Falcone by first class mail satisfied § 34-223(A) as a matter of law.[3] Falcone asserts the statute

---

[2]GCNA joined with Falcone for purposes of this suit, but "tendered its defense to Falcone." Accordingly, only Falcone filed briefs in this appeal.

[3]We generally do not review on appeal the denial of a motion for summary judgment, even after entry of a final judgment. *Strojnik v. Gen. Ins. Co. of Am.*, 201 Ariz. 430, ¶ 11, 36 P.3d 1200, 1203 (App. 2001). But we may review such orders when, as here, the motion is denied on an issue of law. *See id.*, *citing Hauskins v. McGillicuddy*, 175 Ariz. 42, 49, 852 P.2d 1226, 1233 (App. 1992); *see also* A.R.S. § 12-2102(A). Although Falcone asserted at oral argument that this appeal did not involve the denial of summary judgment because Cemex had prevailed on its motion for summary judgment as to notice, this is clearly incorrect; Cemex moved for summary judgment on the sole issue of damages, which the trial court denied.

specifies that both twenty and ninety day notices must be sent only by registered or certified mail, as provided for in the last sentence of that section. *See* § 34-223(A) ("Such notice shall be served by registered or certified mail, postage prepaid . . . ."). Cemex, by contrast, claims that because this sentence contains the singular form ("[s]uch notice"), it applies only to ninety day notices; this, according to Cemex, leaves an "unfilled statutory gap," which we should fill by applying the mailing provision found in A.R.S. § 33-992.01(F) (the mechanic's lien law). Because § 33-992.01 allows for service by first class mail with a certificate of mailing, Cemex maintains its notices were sufficient. We review issues of statutory interpretation and application de novo. *Schwarz v. City of Glendale*, 190 Ariz. 508, 510, 950 P.2d 167, 169 (App. 1997).

¶9            "The primary rule of statutory construction is to find and give effect to legislative intent." *Mail Boxes, Etc., U.S.A. v. Indus. Comm'n*, 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995). To determine that intent, we look first to the plain language of the statute. *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.*, 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994). "When a statute is clear, we do not 'resort to other methods of statutory interpretation to determine the legislature's intent because its intent is readily discernible from the face of the statute.'" *In re Estate of Wyatt*, 235 Ariz. 138, ¶ 5, 329 P.3d 1040, 1041 (2014), *quoting State v. Christian*, 205 Ariz. 64, ¶ 6, 66 P.3d 1241, 1243 (2003). But when a statute's language is ambiguous, we resort to principles of statutory interpretation to discern the legislature's intent. *Bentley v. Building Our Future*, 217 Ariz. 265, ¶ 13, 172 P.3d 860, 865 (App. 2007). Although statutes such as the LMA are to be construed liberally in favor of the materialman, such construction "must give way to express limitations imposed by the legislature." *Maricopa Turf, Inc. v. Sunmaster, Inc.*, 173 Ariz. 357, 361, 842 P.2d 1370, 1374 (App. 1992); *Coast to Coast Mfg. v. Carnes Constr., Inc.*, 145 Ariz. 112, 113, 700 P.2d 499, 500 (App. 1985).

¶10            Both Cemex and Falcone conceded at argument that the notice provision of the statute is ambiguous. Because the term "such

_____

Falcone filed its motion for summary judgment on the issue of notice, which the court also denied.

notice" is susceptible to both parties' interpretations, we agree. We therefore look to the language of the statute as well as principles of statutory interpretation to discern the legislature's intent. *See Bentley*, 217 Ariz. 265, ¶ 13, 172 P.3d at 865.

**¶11** Arizona's "Little Miller Act" (LMA),[4] A.R.S. §§ 34-221 through 34-227, requires a general contractor on a public project to post a bond to ensure that all who supply labor or materials to the project are paid. § 34-222. Both a payment bond and a performance bond, executed by a surety company, must be posted before public work begins. *Id.* The LMA provides a materialman with a right to recover from the payment bond when it has not been paid for material or labor it has provided. § 34-223. To maintain an action on the bond, a claimant must comply with the notice requirements of § 34-223(A), which provides in pertinent part:

> [A]ny such claimant having a direct contractual relationship with a subcontractor of the contractor furnishing such payment bond but no contractual relationship express or implied with such contractor shall have a right of action upon such payment bond upon giving the contractor only a written preliminary twenty day notice, as provided for in § 33-992.01, subsection C, paragraphs 1, 2, 3 and 4 and subsections E and H, and upon giving written notice to such contractor within ninety days from the date on which such claimant performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or

---

[4]The LMA is modeled after the federal Miller Act, 40 U.S.C. §§ 3131 through 3134.

> supplied for whom the labor was done or performed. Such notice shall be served by registered or certified mail, postage prepaid, in an envelope addressed to the contractor at any place the contractor maintains an office or conducts business, or at the contractor's residence.

The statute requires a materialman claimant to send both a preliminary twenty day notice and a final ninety day notice, and neither notice may substitute for the other. *Westburne Supply, Inc. v. Diversified Design & Constr., Inc.*, 170 Ariz. 598, 600, 826 P.2d 1224, 1226 (App. 1992).

¶12　　　The purpose of these notice requirements is "'to fix a time limit after which the prime contractor could make payment to the subcontractor with certainty that he would not thereafter be faced by claims of those who had supplied labor and materials to the subcontractor,'" *United States ex rel. Blue Circle W., Inc. v. Tucson Mech. Contracting Inc.*, 921 F.2d 911, 914 (9th Cir. 1990), *quoting Bowden v. United States ex rel. Malloy*, 239 F.2d 572, 577-78 (9th Cir 1956), and to "protect those who furnish labor or materials in the construction setting," *W. Asbestos Co. v. TGK Constr. Co.*, 121 Ariz. 388, 391, 590 P.2d 927, 930 (1979). Section 34-223(A) also "relieve[s] a prime contractor of liability to sub-subcontractors or materialmen (who have no contractual relation to the prime contractor) after ninety days so that the prime contractor may safely pay his subcontractor without the fear of being subject to 'double payments' to sub-subcontractors." *Coast to Coast Mfg.*, 145 Ariz. at 113, 700 P.2d at 500.

¶13　　　Section 34-223(A) requires twenty day notices to conform to certain provisions contained in § 33-992.01, which establishes requirements for persons seeking to pursue a claim against a mechanic's or materialman's lien. Specifically, § 34-223(A) states that twenty day notices shall be prepared "as provided for" by § 33-992.01(C)(1), (2), (3), and (4), as well as § 33-992.01(E) and (H). Those subsections, respectively, specify the information that must be included in a twenty day notice, § 33-992.01(C), permit materialmen

to file twenty day notices for subsequent work or materials even if a preliminary twenty day notice for earlier work or deliveries was not mailed, § 33-992.01(E), and state the effect on payment when a materialman provides labor or services exceeding the description in a twenty day notice, § 33-992.01(H). Pertinent to this opinion, subsection (F) of that statute, which is not included in § 34-223(A), also states:

> The notice or notices required by [§ 33-992.01] may be given by mailing the notice by first class mail sent with a certificate of mailing, registered or certified mail, postage prepaid in all cases, addressed to the person to whom notice is to be given at the person's residence or business address. Service is complete at the time of the deposit of notice in the mail.

**Applicability of § 33-992.01(F) to the LMA**

¶14        Falcone maintains that § 34-223(A) requires LMA notices to be sent by registered or certified mail and does not authorize service of twenty day notices by first class mail with certificates of mailing. It contends the legislature "expressly excluded" § 33-992.01(F)—the mechanic's lien provision permitting its twenty day notices to be sent by first class mail with a certificate of mailing—from § 34-223(A) of the LMA. Cemex, by contrast, urges that § 33-992.01(F) is "implicitly incorporated" into § 34-223(A), and that notices sent by first class mail with a certificate of mailing therefore are proper.

¶15        To determine whether the mailing provision in § 33-992.01(F) applies to twenty day notices sent pursuant to § 34-223(A) of the LMA, we apply the doctrine of *expressio unius est exclusio alterius*, an established rule of statutory construction meaning "'the expression of one or more items of a class indicates an intent to exclude all items of the same class which are not expressed.'" *See Boynton v. Anderson*, 205 Ariz. 45, ¶ 8, 66 P.3d 88, 90-91 (App. 2003), *quoting State v. Fell*, 203 Ariz. 186, ¶ 11, 52 P.3d

218, 221 (App. 2002). When we apply this doctrine to the plain language of § 34-223(A), it is clear the legislature did not intend the mailing provision of § 33-992.01(F) to apply to the notices required by § 34-223(A). Section 34-223(A) specifically refers to subsections (C)(1), (2), (3), and (4), and subsections (E) and (H). As noted above, subsections (C), (E), and (H) refer to the content and treatment of twenty day notices. By excluding subsection (F) from the list of provisions applicable to twenty day notices under the LMA, the legislature indicated it did not intend subsection (F)'s mailing provisions to apply. *Cf. PAM Transp. v. Freightliner Corp.*, 182 Ariz. 132, 133, 893 P.2d 1295, 1296 (1995) ("[I]f a statute specifies under what conditions it is effective, we can ordinarily infer that it excludes all others.").

**¶16** Nothing in the legislative history of these statutes contradicts this conclusion. *See Carrow Co. v. Lusby*, 167 Ariz. 18, 20, 804 P.2d 747, 749 (1990) ("Legislative intent often can be discovered by examining the development of a particular statute."). When the LMA was enacted in 1969, it only required a claimant to provide a ninety day notice to the contractor. 1969 Ariz. Sess. Laws, ch. 52, § 11. Section 34-223(A) was amended in 1984 to include the requirement that a claimant also provide a written preliminary estimate within twenty days of furnishing services or materials. 1984 Ariz. Sess. Laws, ch. 242, § 1. In doing so, § 34-223(A) incorporated by reference certain subsections of the mechanic's lien law: specifically, § 33-992.01(C)(1), (2), (3), and (4), as well as subsections (D), (E), and (I). *Id.*

**¶17** The LMA was amended again in 1992 to account for § 33-992.01 having been renumbered that same year. 1992 Ariz. Sess. Laws, ch. 353, § 8. In pertinent part, § 33-992.01(I) was renumbered as subsection (H) and subsection (G) was renumbered as subsection (F) following the deletion of § 33-992.01(D).[5] 1992 Ariz. Sess. Laws, ch. 353, § 1. Accordingly, § 34-223(A) removed the

---

[5]Section 33-992.01(F) also was amended to require, inter alia, that a certificate of mailing accompany notices sent by first class mail. 1992 Ariz. Sess. Laws, ch. 353, § 1.

reference to § 33-992.01(D) and renumbered its reference to § 33-992.01(I) as subsection (H). 1992 Ariz. Sess. Laws, ch. 353, § 8. The act was amended again in 1992 to remove gender-specific references, but the pertinent language was not altered. 1992 Ariz. Sess. Laws, ch. 227, § 4.

¶18        Although the legislature could have incorporated the mailing requirements of subsection (F) into § 34-223(A) while making any of these amendments, it did not, creating a strong inference it did not intend to allow LMA notices to be mailed via first class mail. *See Boynton*, 205 Ariz. 45, ¶¶ 10-11, 66 P.3d at 91 (concluding legislature did not intend to incorporate statutory provision into a related statute when it "could have . . . but decided not to" amend statutory language to include such provision). We presume that "'what the Legislature means, it will say.'" *Canon Sch. Dist. No. 50*, 177 Ariz. at 529, 869 P.2d at 503, *quoting Padilla v. Indus. Comm'n*, 113 Ariz. 104, 106, 546 P.2d 1135, 1137 (1976).

**Implicit Incorporation**

¶19        In an amicus brief filed with this court, the Arizona Rock Products Association (ARPA) notes that § 34-223(A) expressly refers to § 33-992.01(C), which in turn refers to § 33-992.01(B) ("The preliminary twenty day notice referred to in subsection B of this section shall be given not later than twenty days after the claimant has first furnished labor"); subsection (B), in turn, refers to the requirement that a claimant file a "written preliminary twenty day notice as prescribed by this section." ARPA contends that "[t]he express reference to providing notice 'as prescribed by this section' refers to the entire section 33-992.01, and not just subsection B." And because § 33-992.01 relies on subsection (F) to prescribe acceptable methods of notice, including notice by first class mail with a certificate of service, ARPA maintains that subsection (F)'s mailing provision implicitly applies to § 34-223(A).

¶20        But this is a strained reading of the statute that contradicts its plain language. First, ARPA's argument would appear to incorporate every provision of § 33-992.01 into the LMA. Such a reading would render meaningless the legislature's express

intent to include certain provisions and exclude others, leaving § 33-223(A)'s specific references to § 33-992.01 irrelevant. *See Weitekamp v. Fireman's Fund Ins. Co.*, 147 Ariz. 274, 275, 709 P.2d 908, 909 (App. 1985) (when interpreting statutes, no part of statute may be "rendered void, superfluous, contradictory or insignificant").

¶21 This interpretation also would incorporate into the LMA certain provisions of the mechanic's lien law that expressly conflict with the LMA's own requirements. For example, the mechanic's lien law requires a claimant to serve twenty day notices on the project owner, the original contractor, the construction lender, if any, and to the person the claimant contracted with to provide labor or materials. § 33-992.01(G). The LMA, by contrast, requires its twenty and ninety day notices be served on "the contractor only." § 34-223(A). Similarly, a claimant under the mechanic's lien law must bring an action to enforce the lien within six months after the lien is recorded. A.R.S. § 33-998(A). The LMA allows an action to be brought within one year from the date a materialman last provided labor or materials. § 34-223(B).

¶22 Additionally, to preserve a claim under the mechanic's lien law, a lien claimant must state under oath, inter alia, that it gave § 33-992.01's preliminary twenty day notice, and must attach "the proof of mailing required by § 33-992.02." A.R.S. § 33-993(A); *see also* A.R.S. § 33-981(D) ("A person required to give preliminary twenty day notice pursuant to § 33-992.01 is entitled to enforce the lien rights . . . only if he has given such notice and has made proof of service pursuant to § 33-992.02."); *Allstate Util. Constr., LLC v. Towne Bank of Ariz.*, 228 Ariz. 145, ¶ 13, 263 P.3d 694, 696-97 (App. 2011). The LMA has no such requirement, and reading into § 34-223(A) the additional provisions of the mechanic's lien law would effectively alter how an LMA claimant may perfect and pursue its claim.

¶23 The results would be equally untenable if ARPA's argument could somehow be construed as urging only that subsection (F)'s mailing provision be implicitly incorporated into § 34-223(A). That subsection of the mechanic's lien law states that service of any notice required under that section "is complete at the

time of the deposit of notice in the mail." § 33-992.01(F). This provision, known as the "mailbox rule," has been determined not to apply to § 34-223(A). In *Maricopa Turf*, we examined whether the mailbox rule contained in § 33-992.01(F) [6] could be read into § 34-223(A). 173 Ariz. at 362-63, 842 P.2d at 1375-76. After noting that the LMA only "incorporates the *form* of notice set out in the" lien statute, we concluded the legislature had "excluded those provisions not mentioned" by § 34-223(A), including § 33-992.01(F)'s mailing requirements. *Id.* at 362, 842 P.2d at 1375.

**¶24** In doing so, we pointed out that the "timely filing of a written claim with the contractor *before* the expiration of ninety days is a condition precedent to recovery under a Little Miller Act bond." *Id.* at 363, 842 P.2d at 1376, *citing Coast to Coast Mfg.*, 145 Ariz. at 113, 700 P.2d at 500; *Greaig v. Park W. Constr. Co.*, 130 Ariz. 576, 579, 637 P.2d 1079, 1082 (App. 1981); *see also W. Asbestos*, 121 Ariz. at 390, 590 P.2d at 929. To incorporate the mailbox rule into the LMA would effectively alter the stringent time requirements within which a claimant must file its notices.[7] *Maricopa Turf*, 173 Ariz. at 362-63, 842 P.2d at 1375-76. Although, as Cemex has pointed out, this analysis was discussed in dicta, we nonetheless find this logic persuasive. To incorporate subsection (F) into § 34-223(A) would effectively allow both twenty and ninety day notices to be mailed on the day the LMA requires the notices to be received, in violation of both the express terms of the LMA and its stated policy to protect contractors

---

[6]When *Maricopa Turf* was decided, the mailbox rule appeared in § 33-992.01(G). Because subsection (G) now has been renumbered subsection (F), 1992 Ariz. Sess. Laws, ch. 353, § 1, we refer to it accordingly.

[7]Cemex suggests the court in *Maricopa Turf* did not apply the mailbox rule to § 34-223(A) because it would "have substantively changed the provisions of the Little Miller Act by extending the time to serve a valid notice," a consideration which it claims is not "at play here." But we will not conclude that a select part of the subsection applies to the LMA but another does not, particularly without any indication that the legislature intended such a result.

from late-filed claims.[8]  *See United States ex rel. Blue Circle W., Inc.*, 921 F.2d at 914; *Coast to Coast Mfg.*, 145 Ariz. at 113, 700 P.2d at 500.

**¶25**　　　　For these reasons, ARPA's argument must fail.  We cannot expand the language of the LMA so drastically as to incorporate all provisions of the mechanic's lien law without producing contradictory and confusing results.  And we cannot, absent express statutory language, selectively choose which provisions may have been implicitly incorporated into § 34-223(A)'s language.  We therefore conclude that § 34-223(A) of the LMA does not incorporate the mailing provision found in § 33-992.01(F).

**Section 34-223(A)'s Mailing Requirements**

**¶26**　　　　We next must resolve how the notices required by § 34-223(A) are to be mailed.  To determine whether the last sentence of § 34-223(A) applies to both the twenty and ninety day notices, we look first to the statute's language.  *See Citadel Care Ctr. v. Ariz. Dep't of Revenue*, 200 Ariz. 286, ¶ 11, 25 P.3d 1158, 1161 (App. 2001).  Unless a word is otherwise defined, we will construe statutory language pursuant to its ordinary and common meaning.  *Id.*; A.R.S. § 1-213; *accord Beatie v. Beatie*, 235 Ariz. 427, ¶ 19, 333 P.3d 754, 758 (App. 2014).  In doing so, we seek to avoid "impossible or absurd consequences."  *Boynton*, 205 Ariz. 45, n.2, 66 P.3d at 92 n.2.  If the statute's language does not disclose the legislative intent, "we scrutinize the statute as a whole and give it a fair and sensible meaning."  *Citadel Care Ctr.*, 200 Ariz. 286, ¶ 11, 25 P.3d at 1161.

**¶27**　　　　The language of the statute contradicts Cemex's argument.  First, the meaning of the word "such" encompasses a plural construction.  "Such" is defined as "[o]f this or that kind," or "[t]hat or those; having just been mentioned."  *Black's Law Dictionary* 1661 (10th ed. 2014).  This indicates that the term "such notice" is

---

[8] To the extent *Maricopa Turf* may have suggested that subsection (F) applies to the LMA's twenty day notices, 173 Ariz. at 363, 842 P.2d at 1376, we disagree for the reasons set forth in this opinion.

applicable to both the twenty and ninety day notices. Because the rest of the sentence is written in the singular, the term "such notice" likewise is applicable to each individual notice sent by an LMA claimant.

¶28 Second, even if the last sentence of § 34-223(A) was written solely in the singular form, it would not compel Cemex's proposed interpretation that it applies only to the ninety day notices. It is an established rule of statutory construction that "[w]ords in the singular number include the plural, and words in the plural number include the singular," A.R.S. § 1-214(B), "unless the legislature expresses 'manifest intent' to the contrary," *N. Valley Emergency Specialists, L.L.C. v. Santana*, 208 Ariz. 301, ¶ 18, 93 P.3d 501, 505 (2004), *quoting Homebuilders Ass'n of Cent. Ariz. v. City of Scottsdale*, 186 Ariz. 642, 649, 925 P.2d 1359, 1366 (App. 1996). The legislature did not indicate a "manifest intent" that the last sentence of § 34-223(A) apply only to the ninety day notices; rather, as the sentence is the only provision in the LMA that addresses notice mailing requirements, we conclude the legislature intended it to apply to both the twenty and ninety day notices. *See Homebuilders Ass'n of Cent. Ariz.*, 186 Ariz. at 649, 925 P.2d at 1366 (we presume legislature "meant what it said" when it enacted rules of statutory construction and was aware of those rules when enacting statutes). Had the legislature intended this sentence to apply to only the ninety day notice, we presume it would have said so. *See, e.g.,* 1992 Ariz. Sess. Laws, ch. 353, § 2 (amending § 33-992.02 to replace the term "[s]uch affidavit" with the term "[t]he affidavit" when referring to one specific form).

¶29 Moreover, our "scrutin[y of] the statute as a whole [to] give it a fair and sensible meaning" compels the same conclusion. *See Citadel Care Ctr.*, 200 Ariz. 286, ¶ 11, 25 P.3d at 1161. Applying the last sentence to only the ninety day notice would, as Cemex has pointed out, result in a gap in the statute, depriving a claimant of guidance regarding how to mail a twenty day notice. This is an absurd result, which we will neither presume nor give effect. *See State v. Medrano–Barraza*, 190 Ariz. 472, 474, 949 P.2d 561, 563 (App. 1997) ("We presume the framers of the statute did not intend an absurd result and our construction must avoid such a

consequence."); *Ariz. Health Care Cost Containment Sys. v. Bentley*, 187 Ariz. 229, 233, 928 P.2d 653, 657 (App. 1996) (courts must give statutes sensible constructions and avoid absurd results). The more logical construction is to conclude that the legislature intended the last sentence to apply to both the twenty and ninety day notices, requiring that each be sent by registered or certified mail.

¶30        Cemex and ARPA have pointed out that "requir[ing] certified or registered mail for twenty day notices would increase the cost of construction for both public and private jobs with no real benefit" and will "deprive contractors of payment who relied upon first class mail pursuant to industry understanding." ARPA maintains that the "industry has relied upon first class mail in conjunction with sending all preliminary twenty day notices for more than thirty years, since 1984, [and] the Court's ruling could undermine all of the notices that have been sent in reliance upon this industry practice that are currently pending." It further urges that reading the LMA to require the twenty day notices to be sent via registered or certified mail would "increase the costs of construction for both public and private jobs with no real benefit" and "makes [no] legislative sense."

¶31        We acknowledge that this opinion may have a negative impact on an apparently longstanding industry practice. But "it is well-settled that 'we cannot legislate,'" and that "'[o]ur province is to construe the law as written.'" *Westburne Supply*, 170 Ariz. at 601, 826 Ariz. at 1227, *quoting Reichenberger v. Salt River Project*, 61 Ariz. 465, 471, 150 P.2d 758, 760 (1944) (alteration in *Westburne*). Although the legislature could have taken the approach urged by Cemex and ARPA, specifying first class mail as a permissible method of delivering LMA notices, it did not. *See id.* If the legislature so intends, it can amend the statute accordingly. *See Galloway v. Vanderpool*, 205 Ariz. 252, ¶ 17, 69 P.3d 23, 27 (2003) ("[I]f the court interprets the statute other than as the legislature intended, the legislature retains the power to correct us.").

**Actual Notice**

¶32        Arizona and federal courts have, to an extent, mitigated the stringency of the notice requirements by determining the requirements are satisfied when the contractor receives actual notice of a materialman's claim.[9]  In *Western Asbestos,* 121 Ariz. at 390, 590 P.2d at 929, our Supreme Court addressed whether § 34-223(A)'s notice requirements were satisfied when a materialman sent a letter to the general contractor via a method other than the required registered or certified mail.[10]  In holding that the materialman's deviation in the method of mailing was not fatal to its claim, the court quoted with approval the United States Supreme Court's rationale in *Fleisher Engineering & Construction Co. v. United States*, 311 U.S. 15, 19 (1940), that the purpose of the statutory registered mail provision

> was to assure receipt of the notice, not to make the described method mandatory so as to deny right of suit when the required written notice within the specified time had actually been given and received.  In the face of such receipt, the reason for a particular mode of service fails.  It is not reasonable to suppose that Congress intended to insist upon an idle form.  Rather, we think that Congress intended to provide a method which would afford

---

[9]Because Arizona's Little Miller Act was modeled after its federal counterpart, cases interpreting the federal statute are persuasive in interpreting Arizona's act.  *Greaig*, 130 Ariz. at 579-80 & n.2, 637 P.2d at 1082-83 & n.2.

[10]Although *Western Asbestos* was decided before § 34-223(A) was amended to require twenty day notices, our conclusion that the last sentence applies to both twenty and ninety day notices persuades us that its reasoning applies.

> sufficient proof of service when receipt of
> the required written notice was not shown.

121 Ariz. at 390, 590 P.2d at 929. The *Western Asbestos* court concluded its decision was "supported by the great weight of case law to the effect that this statute is remedial in nature and must be interpreted so as to effectuate its intent to protect those who furnish labor or materials in the construction setting." *Id.* at 391, 590 P.2d at 930; *see also Norman S. Wright & Co. v. Slaysman*, 124 Ariz. 321, 324, 604 P.2d 252, 254 (1979); *Maricopa Turf*, 173 Ariz. at 362, 842 P.2d at 1375; *Greaig*, 130 Ariz. at 578-79, 637 P.2d at 1081-82.

**¶33** Federal cases similarly have deemed the notice requirements satisfied when the contractor received actual notice. *See United States ex rel. Moody v. Am. Ins. Co.*, 835 F.2d 745, 747-48 (10th Cir. 1987) (noting most circuit courts found notice not sent by prescribed means sufficient when contractor had actual notice of claim against him); *see also United States ex rel. Water Works Supply Corp. v. George Hyman Constr. Co.*, 131 F.3d 28, 32 (1st Cir. 1997); *United States ex rel. Hillsdale Rock Co. v. Cortelyou & Cole, Inc.*, 581 F.2d 239, 243 (9th Cir. 1978). Thus, if a notice sent pursuant to the LMA is actually received by a contractor, the fact that it was sent by a method other than registered or certified mail will not preclude a materialman's action on the bond.

**Remedy**

**¶34** In light of this conclusion, our final task is to determine the appropriate remedy in this case. Falcone, urging the "trial court committed reversible error in ruling that Cemex's 20-day notices were valid," asks us to enter "summary judgment against Cemex as a matter of law." It claims the record contains a declaration from Falcone's owner stating Falcone did not receive the notices and, consequently, there is no genuine issue of fact regarding actual notice that would preclude entry of summary judgment. Cemex contends that "the appropriate remedy is a remand for trial on the factual issue of actual receipt of the preliminary twenty-day notices."

**¶35** Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). On appeal, "we determine de novo whether any genuine issues of material fact exist and whether the trial court properly applied the law." *Best Choice Fund, LLC v. Low & Childers, P.C.*, 228 Ariz. 502, ¶ 10, 269 P.3d 678, 682 (App. 2011); *see also Ray Scottsdale Lumber Co. v. First Fed. Sav. & Loan Ass'n of Phoenix*, 3 Ariz. App. 366, 368, 414 P.2d 754, 756 (1966) (appellate court examines record to determine existence of dispute of material fact).

**¶36** Our review of the record reveals a genuine dispute of material fact. In its motion for summary judgment, Falcone asserted it had not received any of Cemex's twenty day notices. It supported this contention with a declaration prepared by Falcone's owner, Gaetano "Tom" Falcone, who stated without further explanation that Falcone did not receive any of the notices Cemex had mailed. Cemex replied that it had sent four twenty day notices to Falcone on four separate occasions, each with an affidavit of service and certificate of mailing. It supported this contention with a declaration from the person who had mailed the notices as well as copies of the certificates of mailing, which had been stamped, dated, and initialed by a postal employee. Falcone does not dispute that the notices were mailed.

**¶37** At the hearing on the summary judgment motions, Cemex stated it had no evidence Falcone had received the notice aside from "pro[of] that the notice went into the mail." It argued, however, that it would be unlikely for a general contractor "on the job" to be completely unaware of the source of its materials for that project. The court responded that it did not "have facts as to this" and that it was "not going to make any rulings based on" the factual issue of actual notice. The court then concluded that the twenty day notices did not need to be mailed via registered or certified mail and that Cemex's affidavits and notices were "sufficient to meet the purposes of the statute."

**¶38** In so ruling, the trial court purposefully did not make findings as to whether Falcone actually had received Cemex's

twenty day notices. Although Falcone urges that Mr. Falcone's declaration conclusively resolves this issue, we disagree. His declaration is an insufficient basis upon which a court may make a determination, as a motion for summary judgment may not be granted or denied when supported solely by a self-serving and conclusory affidavit. *See Florez v. Sargeant*, 185 Ariz. 521, 526-27, 917 P.2d 250, 255-56 (1996) (self-serving affidavits or affidavits setting forth ultimate facts or legal conclusions lack "relevant foundation" and "can neither support nor defeat a motion for summary judgment").

¶**39** Mr. Falcone's declaration states "Falcone has never received any communication" from Cemex and "[a]t no time did Falcone receive a Preliminary Twenty-Day Notice" from Cemex. But it provided no evidence that Mr. Falcone was the person designated to receive such notices or specify any steps Falcone took to verify it had not, in fact, received them; nor did it suggest any possible reason—such as an incorrect address or missing postage— that might explain why each of four separate notices might not have reached Falcone. Mr. Falcone's declaration does not conclusively demonstrate that Falcone did not receive the notices, nor establish the absence of a genuine issue of material fact. Accordingly, we vacate the judgment and remand this case to the trial court for a new trial.

**Attorney Fees**

¶**40** Cemex has requested its reasonable attorney fees pursuant to the terms of the bond,[11] which provides that "[t]he prevailing party or any party which recovers judgment on this bond shall be entitled to such reasonable attorney's fees as may be fixed

---

[11]Cemex also has requested its attorney fees pursuant to A.R.S. § 12-341.01, which permits a court to award a successful party attorney fees in "any contested action arising out of a contract." But an action against an LMA bond is a statutory remedy, and as such does not "aris[e] out of a contract" pursuant to § 12-341.01. *Maricopa Turf*, 173 Ariz. at 363, 842 P.2d at 1376; *see also* § 34-222(B).

by the court or a judge thereof." [12]   Because neither party has prevailed on appeal, we make no award at this time.   If Cemex ultimately is the prevailing party, the trial court may consider an award to Cemex for attorney fees incurred during this appeal.  *See Tierra Ranchos Homeowners Ass'n v. Kitchukov*, 216 Ariz. 195, ¶ 37, 165 P.3d 173, 182 (App. 2007) (deferring party's request for attorney fees on appeal "to the trial court's discretion pending resolution of the matter on the merits").

**Disposition**

**¶41**        For the foregoing reasons, we vacate the judgment and remand for a new trial.

---

[12]Falcone, for the first time in its reply brief, likewise has requested its attorney fees pursuant to § 12-341.01 and the terms of the payment bond.  But Rule 21(a)(1), Ariz. R. Civ. App. P., requires a party claiming attorney fees to do so in an opening or answering brief on appeal.  We therefore do not consider this request.